1           UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF ALASKA
2

3   UNITED STATES OF AMERICA, )
                              )
4           Plaintiff,        )
                              )
5   vs.                       )   CASE NO. 3:17-cr-00164-TMB
                              )            3:17-cr-00163-TMB
6   PARAS JHA,                )
                              )
7           Defendant.        )
    _____)
8

9

10       PARTIAL TRANSCRIPT OF IMPOSITION OF SENTENCE
        (Final Portion of Hearing - Public Proceedings)
    **BEFORE THE HONORABLE TIMOTHY M. BURGESS, DISTRICT JUDGE**
11           September 18, 2018; 1:08 p.m.
                   Anchorage, Alaska
12

13  **FOR THE GOVERNMENT:**
          Office of the United States Attorney
14        BY:  ADAM ALEXANDER
          BY:  CATHERINE ALDEN PELKER
15        222 West 7th Avenue, #9
          Anchorage, Alaska 99513
16        (907) 271-5071

17  **FOR THE DEFENDANT:**
          Law Offices of Robert G. Stahl, LLC
18        BY:  ROBERT GEORGE STAHL
          220 Saint Paul Street
19        Westfield, New Jersey 07090
          (908) 301-9001

20

21

22  _____

23              **SONJA L. REEVES, RMR-CRR**
               Federal Official Court Reporter
24              222 West 7th Avenue, #4
               Anchorage, Alaska 99513
25       Transcript Produced from the Stenographic Record

<pre>
 1                  UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF ALASKA
 2

 3   UNITED STATES OF AMERICA, )
                              )
 4          Plaintiff,        )
                              )
 5   vs.                      )   CASE NO. 3:17-cr-00166-TMB
                              )            3:17-cr-00167-TMB
 6   DALTON NORMAN,           )
                              )
 7          Defendant.        )
     _____)
 8

 9

          PARTIAL TRANSCRIPT OF IMPOSITION OF SENTENCE
10       (Final Portion of Hearing - Public Proceedings)
      BEFORE THE HONORABLE TIMOTHY M. BURGESS, DISTRICT JUDGE
11               September 18, 2018; 1:08 p.m.
                      Anchorage, Alaska
12

13   FOR THE GOVERNMENT:
             Office of the United States Attorney
14           BY:  ADAM ALEXANDER
             BY:  CATHERINE ALDEN PELKER
15           222 West 7th Avenue, #9
             Anchorage, Alaska 99513
16           (907) 271-5071

17   FOR THE DEFENDANT:
             Nesbett & Nesbett, P.C.
18           BY:  DAVID A. NESBETT
             750 West 2nd Avenue, Suite 105
19           Anchorage, Alaska 99501
             (907) 770-6920
20

21

22   _____

23               SONJA L. REEVES, RMR-CRR
                 Federal Official Court Reporter
24                 222 West 7th Avenue, #4
                   Anchorage, Alaska 99513
25        Transcript Produced from the Stenographic Record
</pre>

1      UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF ALASKA

2

3 UNITED STATES OF AMERICA, )
            )
4    Plaintiff,   )
            )
5 vs.         )  CASE NO. 3:17-cr-00165-TMB
            )
6 JOSIAH WHITE,    )
            )
7    Defendant.  )
 _____)

8

9

    PARTIAL TRANSCRIPT OF IMPOSITION OF SENTENCE
10   (Final Portion of Hearing - Public Proceedings)
  **BEFORE THE HONORABLE TIMOTHY M. BURGESS, DISTRICT JUDGE**
11      September 18, 2018; 1:08 p.m.
        Anchorage, Alaska

12

13 **FOR THE GOVERNMENT:**
    Office of the United States Attorney
14    BY:  ADAM ALEXANDER
    BY:  CATHERINE ALDEN PELKER
15    222 West 7th Avenue, #9
    Anchorage, Alaska 99513
16    (907) 271-5071

17 **FOR THE DEFENDANT:**
    Office of the Federal Public Defender
18    BY:  F. RICHARD CURTNER
    601 West 5th Avenue, Suite 800
19    Anchorage, Alaska 99501
    (907) 646-3400

20

21

22 _____

23     **SONJA L. REEVES, RMR-CRR**
    Federal Official Court Reporter
24     222 West 7th Avenue, #4
     Anchorage, Alaska 99513
25  Transcript Produced from the Stenographic Record

```
 1            (Call to Order of the Court at 1:08 p.m.)

 2            (Proceedings took place that are not included

 3   in this Partial Transcript, after which, proceedings

 4   continued as follows:)

 5            DEPUTY CLERK:  All rise.  His Honor, the Court,

 6   the United States District Court for the District of

 7   Alaska is again in session.

 8            Please be seated.

 9            THE COURT:  Have a seat everybody.  Sorry, my

10   apologies.  So we -- what I would like to do is hear

11   from the parties as to your recommendation as to an

12   appropriate sentence, taking into consideration the

13   factors that are identified in 18 United States Code,

14   Section 3553(a).

15            What I would like to do is give you an idea of

16   what I think is probably the appropriate result, and

17   then you can convince me I'm right or wrong as you go

18   forward, but I think it's valuable for Counsel to

19   understand sort of how I view the case to help inform

20   your comments.

21            So again, you know, the 34 -- the 3553(a)

22   factors that I think are implicated here are:  One, the

23   sentence to reflect the seriousness of the offense, and

24   as we heard from the testimony today, just how serious

25   the offenses in both cases were.  So I think that has
```

been established in the evidence that's been presented
to the Court.

I think deterrence of criminal conduct is also
important.  These are obviously very difficult cases to
investigate, and it's important that there are
consequences for this type of conduct.  So I think, you
know, the deterrence is important.

I think protecting the public from further
crimes of each of the defendants is also an important
consideration.  I'll tell you my initial analysis is I
don't think it's as important in this case.  I think
they are incredibly young, and I think they have shown
indications that they are willing to change their ways
going forward.  So I think that's of a less concern to
me.

And then, obviously, restitution is going to be
an important factor in this case.  So taking those
factors into consideration, I think that something other
than a jail term is appropriate in this case.  Again, I
think these are very young defendants, they have a lot
of opportunities ahead of them if they can focus their
energy in the right way, their energy and their talent.

So I do think a probationary sentence is
appropriate for a couple of reasons.  One is I think
when I look at those 3553(a) factors I listed, I think

1    it argues for a probationary sentence rather than a jail

2    sentence.

3         The other advantage is this:  I can be assured

4    that their behavior will conform to societal norms for a

5    longer period if they are on probation than if they are

6    on supervised release.  Supervised release is limited to

7    three years.  Probation is five years.

8         And more importantly, you know, the Government

9    has probably heard me make reference to this, and I know

10   Mr. Curtner has heard me make reference to this before,

11   but they have the sort of Damocles hanging over their

12   head for that five-year period.

13        That means if you don't behave and you engage

14   in this type of behavior in the future, you will be back

15   in front of me, and you're looking at the same potential

16   sentence you were looking at today.  So I think there is

17   -- I think there is a great incentive to the defendants

18   to do the right thing and not violate in the future.

19        So for those reasons, I do think that a

20   probationary sentence is more appropriate in this case

21   than a term of imprisonment.  That's my initial read on

22   the case.

23        So I'll first hear from the Government, then

24   I'll hear from each of the defense counsel, if there is

25   anything anybody wants to add, and then I'll hear from

1 the defendants if there is anything they want to say.

2    MS. PELKER:  Thank you, Your Honor.  I think

3 what we have here really is a unique circumstance and

4 that is what's leading the Government to not oppose the

5 probation officer's recommendation of probation.  And

6 that's particularly in light of the defendants'

7 extensive cooperation and what's outlined in the

8 Government's motion for a downward departure pursuant to

9 5K1.1.

10    The Government would emphasize here though that

11 this was incredibly severe conduct and that absent that

12 cooperation, the Government would be asking for a period

13 of incarceration here.

14    We have defendants who certainly were youthful

15 offenders with no criminal history.  They did accept

16 responsibility, which were all significant mitigating

17 factors, but they don't excuse the underlying conduct

18 where we have the development of the Mirai botnet that

19 was a massive internet of things, botnet of the sort

20 that the Government at that point and security

21 researchers had never seen before, that took advantage

22 of very novel vulnerabilities to infect hundreds of

23 thousands of devices, including devices of victims here

24 in the District of Alaska.

25    And the defendants used those cyber skills that

we're hopeful will help them become positive
contributors to society in this case to build this
botnet and then to launch devastating attacks against
victims, both for financial gain as well as out of
personal animosity.

And then even after the defendants learned that
the FBI was onto them, they went on to continue their
criminal activity in developing and building this
clickfraud botnet, again, using their incredible talents
that they have unfortunately been able to hone over
years of criminal activity.

The Government is very encouraged that the
defendants appear to be on a very positive path toward
rehabilitation here. The Government would like to see a
sentence that's crafted to support that sort of
rehabilitation, but the Government does posit that five
years of probation is appropriate to allow for the
extended supervision and the period of supervision that
the Court referenced.

The additional 2500 hours here will address not
just the severity of the defendants' underlying criminal
activity that they are being sentenced for, but also we
hope to reduce that chance of recidivism. The
2500 hours amounts to about ten hours a week. We would
like that to be defined to consist of work by, for or

1  through the FBI.

2  THE COURT:  You asked for 2500 hours?

3  MS. PELKER:  2500 hours of community work

4  service, which we recognize is a sizeable amount of time

5  but, given that it's extended out across the five years,

6  amounts to about ten hours a week, and would allow the

7  defendants to continue the type of work they have been

8  doing and that we detailed in our filings for the FBI

9  and benefiting cyber security researchers to date.

10  Here this will, in addition to the supervision

11  that's always already going to be provided by the

12  probation officer, it will allow the defendants to

13  continue their work with the FBI, who is going to be an

14  added check on any potential inclination by the

15  defendants to return to their previous illicit

16  activities.

17  We do believe that there is an ongoing

18  obligation to protect the public here.  Unfortunately,

19  the defendants, in returning back to the clickfraud

20  botnet after developing and building Mirai, have shown

21  that they do have an inclination to engage in this type

22  of criminal activity.

23  We definitely have seen that since they have

24  agreed to cooperate with the Government that they have

25  engaged in extensive cooperation that's been incredibly

valuable, but we want to see them on a path to continue
down that road.

        THE COURT:  All right.  Thank you very much.

        Well, you look like you're next in line,
Mr. Curtner.

        MR. CURTNER:  Well, Judge, first of all, let me
say I think you're right, and so normally I would spend
more time --

        THE COURT:  Telling me I'm wrong?

        MR. CURTNER:  No, in advocating for what I
think is a proper sentence, but I think it's very clear
the whole picture that's been presented to the Court
that probation is appropriate for Mr. White.

        He is obviously a young and brilliant young man
as far as computers are concerned.  And I think he had a
tremendous lapse in judgment.  I think he recognizes
that now.  And it's been a learning experience for him,
and so I really don't think you'll ever see him again.
And I think he's certainly on the right path, and so I
think probation is the appropriate sentence in this
case.

        THE COURT:  All right.

        Mr. White, is there anything you want to say?
You don't have to say anything, but if there is anything
you want to say, this is your opportunity.

1          DEFENDANT WHITE:  No, Your Honor.

2          THE COURT:  Okay.

3          MR. STAHL:  Thank you, Your Honor.  Obviously

4    we were one of those extensive lengthy sentencing

5    submissions you referred to, so I rely --

6          THE COURT:  It's in a binder actually.

7          MR. STAHL:  That's how I like to go.

8          Your Honor, obviously, we agree with both the

9    Government and probation department and the PSR for five

10   years of probation.

11         I would add, because of Mr. Jha's unique

12   circumstances of school and work, and I'll explain that

13   in a moment, that I ask Your Honor to waive the home

14   confinement or a curfew provision, and it's because of

15   the following:

16         As you know from our submission, Mr. Jha is in

17   the School 42, and it's not the typical university

18   setting where there is day classes or evening classes.

19         THE COURT:  I thought it was all online.

20         MR. STAHL:  No, no, he's actually in the Bay

21   area in a dormitory.  In addition to that they work

22   their own hours in the computer lab in the school,

23   Mr. Jha is also an RA.  And he's in the dorm of

24   400-some-odd students, and he is tasked at all hours of

25   the day and night to go out and to go to different areas

of the dorm when students lock themselves out, when they
have other issues, computer issues, and all sorts of
things that go on with young people being forgetful and
things.

So to have him under a curfew or electronic
monitoring, some type of system where he would be in his
room for particular hours, would be impractical. I have
discussed this with the Government. I don't know if
they still take the position that they did in the
sentencing memo, but I think in his circumstances, it is
impractical.

And quite frankly, it's not necessary. Mr. Jha
has been not only working extensively with the
Government for the past year plus, he's also been out at
the school, as Your Honor knows, for a considerable
period of time and has had no issues at all with his
computer use. It's an advanced course.

He's not only an RA there, but he is one of the
trusted members of the school that has solved the
computer issues for what is an advanced computer school
and has received recognition from the school for solving
their network and other problems.

So I don't disagree with the five years
probation. I don't disagree with the hours of community
service. I simply would ask the Court to waive any

1   provision about a curfew or some type of monitoring

2   based upon his situation right now.

3           THE COURT:  Let me stop you for a second.

4   What's the Government position on the --

5           MS. PELKER:  I believe we would defer to the

6   Court to the extent it would impact the defendant's

7   ability to continue with his educational

8   responsibilities.

9           THE COURT:  Do you feel the same way for all

10  three defendants, or I mean, what if we just took an

11  incremental approach and not impose the home

12  confinement, the GPS and home confinement at this point,

13  as long as they are pursuing their community service,

14  pursuing educational opportunities or work, any

15  combination of those things.

16          If there needs -- if for some reason they end

17  up violating the Court's trust and we need to tighten

18  the conditions, you can always seek a modification of

19  supervision.

20          MS. PELKER:  That's fine with the Government.

21          THE COURT:  So I think we have taken care of

22  that for all three defendants.

23          MR. STAHL:  Thank you, Judge.  And just last,

24  we don't take any issue with the restitution number that

25  has been arrived at.

1          And I would just ask, based upon the

2     restitution, based upon Mr. Jha as a full-time student,

3     he has a part-time job now, that you would waive any

4     fine.

5          THE COURT:  I'm not going to impose any fine.

6          MR. STAHL:  Then I will sit down.

7          THE COURT:  Thank you.

8          Mr. Jha, is there anything you would like to

9     say?  Again, you don't have to say anything, but if

10    there is anything you would like to say, this is your

11    opportunity.

12         DEFENDANT JHA:  Yes, Your Honor.  I realize

13    we're all here because of me and the mistakes that I

14    made.  I'm fully sorry for my actions, and I apologize

15    to the people and businesses that were impacted by them.

16         I'm sorry for the family, friends for putting

17    them in trouble with the FBI.  I'm sorry for the attacks

18    against Rutgers and apologize to the students and

19    faculty that were affected.

20         I didn't think of them as real people because

21    everything I did was online in a virtual world.  Now I

22    realize I have hurt real people and businesses and

23    understand the extent of damages I did.

24         What started off as a small mistake continued

25    down a slippery slope to a point where I am ashamed to

admit what I have become. I had not stopped to consider the damage that my action was causing.

I have hurt my parents, my family, my friends. I lied to them and broke their trust. I want to say I'm really sorry to my mother, my father, and my family and friends for putting them through this.

Two years ago when I first met Special Agent Elliott Peterson, I was an arrogant fool believing that somehow I was untouchable. When I met him in person for the second time, he told me something that I'll never forget: "You're in a hole right now. It's time you start digging."

Looking up from my hole, I came to realize just how far I had fallen. At that point, I was at a crossroads in my life. I could choose to ignore the consequences of my actions, or I could face my situation head on and start my journey back up.

The first step to doing right was being open and honest with the transgressions. Only then would I be able to start making changes in my life. Otherwise, I will always have something to hide.

This transparency has allowed me a fresh start in life from assisting the FBI in several cases to attending school, to making real friends and holding down a job in a field I like.

1          I have continued to use these skills for the

2     betterment of society and to start giving back some of

3     what I have taken.  I cannot change the past and have to

4     live with the consequences of those actions.  I take

5     responsibility for my mistakes, and, once again, say

6     sorry to all the people that were affected.

7          I'd also like to thank my family, my friends

8     and Agent Peterson for helping me through this.  I know

9     that rebuilding trust is a monumental task, one that I

10    hope to rise up to, starting with the changes I have

11    already made in my life.

12          THE COURT:  Thank you very much.

13          MR. STAHL:  Thank you, Your Honor.

14          THE COURT:  Thank you.  Okay.

15          MR. NESBETT:  As with the others, Mr. Norman

16    also agrees with the proposed sentence in this case, and

17    will also, to a large extent, rest on all of the

18    extensive briefing we all have done in this case.

19          I'm sure the Court has read all of it.  And one

20    of the issues that was brought up earlier were his

21    objections to the PSR.  It's very important for

22    Mr. Norman, throughout all of the time that we have

23    spent together discussing the case, it has been vitally

24    important for Mr. Norman to make sure that the Court

25    understands that his role in the Mirai virus came in at

1   a later date chronologically.

2        It is very important that I make sure to

3   emphasize that with the Court, that he came in in

4   September, that his role was limited to the extent that

5   he didn't profit from it, and he didn't draft the code,

6   nor was -- and he was actively discouraging the others

7   from releasing the code virus.

8        He says all of that in order to put a fence

9   around, in his own mind, his role in that offense, not

10   in any way to subtract from his responsibility for what

11   happened.  It's really important that I distinguish that

12   and I help him distinguish that.  But for his own sense

13   of integrity, it is important I pointed that out to the

14   Court.

15        And the other issue I want to emphasize from

16   the briefing was that the length of time that all three

17   defendants in this case, including Mr. Norman, had been

18   working with the FBI on this establishes a very

19   significant track record of credibility and trust with

20   the FBI.  That is very different from a typical

21   cooperation type of environment where you come in for a

22   debrief, for example, and you meet once or twice with

23   the agents.

24        I think this sentence helps capture that

25   history, which in turn I think emphasizes the likelihood

 1    that they will not be back and that recidivism is not an

 2    issue that we need to worry about in this case.

 3            And finally, one issue that I discussed at

 4    length, or at least mentioned in my briefing and also

 5    attached some accompanying documents to the briefing,

 6    was having to do with Mr. Norman's difficulty in speech,

 7    and this is related in some ways to his conduct in this

 8    case and his activity in computers.

 9            But as a result of those disabilities, he has

10    asked that I read a letter to you.  It's not because

11    he's nervous at public speaking necessarily.  It's

12    because he has a disability that prevents him from being

13    able to speak to the Court, one of the reasons he was

14    having a difficult time even answering yes or no

15    questions to the Court earlier.

16            I would like to read that letter.  Again, this

17    is something to supplement what he has submitted

18    already.

19            "Your Honor, I would again like to express my

20    remorse for my actions.  I now have to move forward with

21    my life as a convicted felon.  I just want everyone in

22    this courtroom to know I'm not a malicious monster with

23    no integrity or morals.  I myself did not want to cause

24    harm to anyone or any company by my actions of

25    associating with Mr. Jha and Mr. White.

1    "I truly regret my failures to end this mess.

2  I want to thank the FBI, especially Agent Peterson, for

3  being a positive mentor through this process and by

4  going above and beyond what was expected of him.  I also

5  would like to thank the Government for suggesting

6  leniency, and I promise I will never be on their radar

7  again.

8        "I would like to thank the Department of

9  Justice and the federal court system, Your Honor, for

10  appointing Mr. Nesbett as my attorney."

11        I didn't write that.

12        "He has worked tirelessly in my defense and I

13  will always be in debt to him.  Lastly I would like to

14  thank you, Your Honor, for ruling today and being

15  patient with me throughout this process.  I promise Your

16  Honor not to fail you, as I have failed myself.  I have

17  to move on in my life.

18        "It will be an uphill struggle being a

19  convicted felon; however, my integrity has never

20  wavered.  I truly know right from wrong.  I just need to

21  synchronize my actions with my thoughts and with what my

22  parents have instilled in me.

23        "I'm very fortunate to have a loving family who

24  will support me through good times and bad times, as

25  evident in the last two years.  With my honor and

integrity still ingrained in me, I will pick up the pieces of this shattered mess and make my home in New Orleans proud of me one day again soon.  I will put my mind and my skills to a positive effort for the remainder of my life.

"Thank you again, Your Honor, for allowing me to address the Court."

THE COURT:  Thank you very much.  I appreciate everybody's sentencing comments.  You're probably happy to know you haven't changed my initial opinion that a probationary sentence for all three defendants is appropriate in this case.

You know, you're still very young men.  I'm not sure you have any sense of -- hopefully you're getting to have a sense of, and from your statements it seemed like you're beginning to have a sense of the impact what you did had on society, on companies, on people, on your families, I mean, if you think about what you put your families through.

On the other hand, you know, I got to tell you you're lucky because 99 percent of the time that I sentence somebody in court here, there is nobody out there for them.  So I hope when you go home tonight you thank your families for being there for you, and I hope you never put them in this situation you put them in

1  here today.

2         I am also heartened that you have developed

3  such a good relationship with Special Agent Peterson.

4  You know, in this political climate -- and this is not

5  intended to be a political statement, but a lot of times

6  you hear a lot of criticism of the FBI, but I'll tell

7  you you couldn't pick a better role model than Agent

8  Peterson, someone who served his country in the Marines,

9  continues to serve his country in the FBI.

10         And I hope you take something from that,

11  because you're young, you have a lot to give to society,

12  and, you know, you have a lot of talent and skill.  I

13  hope you use it for good and not bad going forward.

14         So let me take these one at a time, and I'll

15  start as I began, with Mr. White.

16         So I'm going to impose all of the special

17  conditions that are listed, except -- with the exception

18  -- and this is going to be true for all three defendants

19  -- I'm not imposing condition number six, which is the

20  monitoring system.  But I am changing number one, which

21  is the recommendation for 200 hours of community service

22  to 2500 hours of community service during this five-year

23  period of probation.

24         Pursuant to the Sentencing Reform Act of 1984

25  and considering the factors found in 18 U.S.C. 3553(a),

which I have already articulated, it is the judgment of

Court that the defendant, Josiah White, is hereby placed

on probation for a term of five years.

While on probation, the defendant shall not

commit another federal, state or local crime, shall not

possess a firearm or illegal controlled substance, and

shall comply with the collection of a DNA sample and

shall comply with the standard as well as special

conditions included in the judgment issued by the Court.

The mandatory condition of supervision as set

forth in 18 United States Code Section 3563(a)(5)

requiring the defendant to submit to drug testing is

suspended because there appears to be low risk of future

substance abuse by the defendant.

The Court finds that the defendant does not

have the ability to pay a fine. It is further ordered

that the defendant shall pay the United States the

special assessment of $100, which shall be paid

immediately to the clerk of court.

It is further ordered the defendant shall pay

restitution in the amount of $127,000 consisting of

$15,000 to HyPixel, $2,000 to Psychz Network, $100,000

to Akamai. I'm batting about 800 so far. And $10,000

to HostUS.

The restitution shall be joint and severally

1   with his co-defendants, Mr. Jha in case

2   3:17-criminal-164, and Mr. Norman in case

3   3:17-criminal-167.  Any unpaid amount is to be paid

4   during the period of supervision in monthly installments

5   of not less than 10 percent of the defendant's gross

6   monthly income or $25, whichever amount is greater.

7   Interest on the restitution shall not be waived.

8           And there was an appeal waiver; is that

9   correct?

10          MR. ALEXANDER:  Yes, Your Honor.

11          THE COURT:  Mr. White, as part of your

12  agreement in this case, you have given up your right to

13  appeal.  Do you understand that?

14          DEFENDANT WHITE:  Yes, Your Honor.

15          THE COURT:  Okay.  Mr. Jha, again, same two

16  changes:  I'm eliminating special condition listed in

17  number six and I'm modifying condition number one to be

18  2500 hours.

19          Pursuant to the Sentencing Reform Act of 1984

20  and considering the factors found in 18 United States

21  Code Section 3553(a), it is the judgment of the Court

22  that the defendant is hereby placed on probation for a

23  term of five years, consisting of five years in case

24  3:17-criminal-163 and five years in case

25  3:17-criminal-164 to be run concurrently.

1          While on probation, the defendant shall not

2     commit another federal, state or local crime, shall not

3     possess a firearm or illegal controlled substance and

4     shall comply with the collection of a DNA sample and

5     shall comply with the standard as well as special

6     conditions included in the judgment issued by the Court.

7          The mandatory condition of supervision set

8     forth in 18 United States Code Section 3563(a)(a)

9     requiring the defendant to submit to drug testing is

10    suspended because it appears to be a low -- there

11    appears to be low risk of future substance abuse by the

12    defendant.

13         The Court finds the defendant does not have an

14    ability to pay a fine.  It is further ordered the

15    defendant shall pay the United States the special

16    assessment of $200, which shall be paid immediately to

17    the clerk of the court.

18         It is further ordered that the defendant shall

19    pay restitution in the amount of $127,000, consisting of

20    $15,000 to HyPixel, $2,000 to Psychz Networks, $100,000

21    to Akamai and $10,000 to HostUS.  The restitution shall

22    be joint and several with Josiah White, case

23    3:17-criminal-165, and Dalton Norman, case

24    3:17-criminal-167.

25         Any unpaid amount is to be paid during the

period of supervision and in monthly installments of not less than 10 percent of the defendant's gross monthly income or $25, whichever amount is greater.  Interest on the restitution shall not be waived.

Mr. Jha, same as I mentioned in regard to Mr. White, you had a waiver of your appeal rights in this case, which means you don't have a right to appeal my sentence.  Do you understand that?

DEFENDANT JHA:  Yes, Your Honor.

THE COURT:  I'm sorry.  There were no charges to dismiss for your client?

MR. ALEXANDER:  That's correct.

THE COURT:  For any of them?

MR. ALEXANDER:  I think that's correct, Judge.

THE COURT:  While I'm doing the last one, you can double-check and make sure there is no charges that need to be dismissed.

All right.  Mr. Norman, again, of the special conditions I'm making the same modification.  I'm not requiring that you wear any monitoring, but I am requiring that you do 2500 hours of community service during your five-year period of probation.

The same -- this goes to -- same comments to all three of you.  You know, part of the reason is you can do the community service in any way you like.  Like

1    I mentioned before, you can work in a soup kitchen, you

2    can work picking up garbage, you can continue to help

3    provide with your expert assistance that can help

4    others.  What's important is you understand that you

5    have an obligation to give back.  You have a lot of

6    talent and skill, but it's not a one-way street.

7            Okay.  Pursuant to the Sentencing Reform Act of

8    1984 and considering the found in 18 United States Code

9    Section 3553(a), it is the judgment of the Court that

10   the defendant, Dalton Norman, is hereby placed on

11   probation for a term of five years, consisting of five

12   years in case 3:17-criminal-166, and five years in case

13   3:17-criminal-167, to be run concurrently.

14           While on probation, the defendant shall not

15   commit another federal, state or local crime, shall not

16   possess a firearm or illegal controlled substance, shall

17   comply with the collection of a DNA sample and shall

18   comply with the standard as well as special conditions

19   that are included in the judgment issued by the Court.

20           The mandatory condition of supervision as set

21   forth in 18 United States Code Section 3563(a)(5)

22   requiring the defendant submit to drug testing is

23   suspended because there appears to be a low risk of

24   future substance abuse by the defendant.

25           The Court finds that the defendant does not

have an ability to pay a fine.  It is further ordered
the defendant shall pay the United States the special
assessment of $200, which shall be paid immediately to
the clerk of court.

It's further ordered that the defendant shall
pay restitution in the amount of $115,000, consisting of
$15,000 to HyPixel and $100,000 to Akamai.  The
restitution shall be joint and several with Josiah White
in case 3:17-crimimal-165 and Paras Jha in case
3:17-criminal-164.

Any unpaid amount is to be paid during the
period of supervision in monthly installments of not
less than 10 percent of defendant's gross monthly income
or $25, whichever amount is greater.  Interest on the
restitution shall not be waived.

And I think that should take care of everything
unless there is anything -- I'm sorry.  I forgot to
mention, Mr. Norman, you also in your plea agreement
agreed to give up your right to appeal.  Do you
understand that?

DEFENDANT NORMAN:  Yes.

THE COURT:  Okay.  So there are no charges to
dismiss?

MR. ALEXANDER:  There aren't, Your Honor.  Just
briefly, pursuant to the plea agreement, it was

previously discussed during the preliminary change of

plea hearings, there was a term in all of the plea

agreements regarding voluntary abandonment of

cryptocurrency seized during the course of the

investigation.

THE COURT:  Actually, I do recall that.  So

it's not a forfeiture, it's just an abandonment.  Have

you secured that?

MR. ALEXANDER:  Some of it I believe is in FBI

custody.  I believe the cryptocurrency belonging to

Mr. Norman, some of which I believe was in the

attorney's custody, but all of which, pursuant to the

terms of the plea agreement, upon conclusion of

sentencing, should be voluntarily abandoned to law

enforcement.

THE COURT:  Mr. Nesbett has it?

MR. ALEXANDER:  No.  Well, Mr. Nesbett -- I'm

not sure if Mr. Nesbett has it here physically.  I think

that is actually in FBI New Orleans custody.

THE COURT:  Is it just a key?

MR. ALEXANDER:  USB thumb drive.

MR. NESBETT:  We helped effectuate some of that

return at the time, but I think that went back with New

Orleans I believe.

THE COURT:  So I'm a little confused.  So you

       1    do or don't have it all?  That's kind of a yes or no.

       2           MR. ALEXANDER:  Your Honor, I believe that --

       3    Mr. Stahl can correct me if I'm wrong -- that he has got

       4    custody of --

       5           MR. STAHL:  My understanding is that the

       6    custody has been -- it was given to FBI in Newark field

       7    office, so they have that.

       8           But whatever we need to do, if there is

       9    anything, obviously, we'll effectuate that.

      10           THE COURT:  Okay.  All right.  So I will assume

      11    that you'll close the loop on getting it transferred to

      12    the Government of the cryptocurrency.

      13           MR. ALEXANDER:  That was all, Your Honor, just

      14    consistent with the plea agreement.  I have no reason to

      15    believe it won't happen.

      16           MR. STAHL:  I have one housekeeping thing to

      17    alert Your Honor.  I have already spoken to the court

      18    reporter.  Tomorrow my office will be submitting a

      19    transcript request, including the sealed proceedings, in

      20    order for Your Honor to consider.

      21           I believe the Government has no objection.  I

      22    would like to have the sealed proceedings available to

      23    the Court in New Jersey, Judge Shipp, and also the U.S.

      24    attorney's office and probation for Mr. Jha's sentencing

      25    next week, because this cooperation is being credited

1    there as well.  I think it is appropriate to do so.

2           THE COURT:  Sure.  So you'll get that request

3    to me.

4           MR. ALEXANDER:  My understanding is that that

5    request is that it will remain under seal in New Jersey

6    as well.

7           THE COURT:  The sealed portion?

8           MR. STAHL:  It won't be made public.  It will

9    be submitted to the parties, the Court, the assistant

10   U.S. attorney and probation.

11          THE COURT:  Okay.  I will sign off on that to

12   make sure that you have that available.

13          Okay.  Great.  Anything else?

14          MR. STAHL:  No, Your Honor.  Thank you very

15   much.

16          THE COURT:  Mr. Nesbett?

17          MR. NESBETT:  No, Your Honor.

18          MR. CURTNER:  No, Your Honor.  Thank you.

19          THE COURT:  Mr. Alexander?

20          MR. ALEXANDER:  No, Your Honor.  Thank you.

21          THE COURT:  All right.  Thank you very much.

22   We'll be in recess.

23          Good luck, gentlemen.

24          DEPUTY CLERK:  All rise.  This matter is

25   adjourned.  This court now stands adjourned subject to

1    call.

2            (Proceedings concluded at 3:28 p.m.)

3

4                    CERTIFICATE

5        I, Sonja L. Reeves, Federal Official Court Reporter
     in and for the United States District Court of the
6    District of Alaska, do hereby certify that the foregoing
     transcript is a true and accurate transcript from the
7    original stenographic record in the above-entitled
     matter and that the transcript page format is in the
8    conformance with the regulations of the Judicial
     Conference of the United States.
9
         Dated this 20th day of September, 2018.
10

11
                            /s/ Sonja L. Reeves
12                      SONJA L. REEVES, RMR-CRR
                        FEDERAL OFFICIAL COURT REPORTER
13

14

15

16

17

18

19

20

21

22

23

24

25